**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-03239-001-TUC-SHR (EJM) |
| Plaintiff, | **ORDER ADOPTING R&R** |
| v. | |
| Fredi Burquez-Silveira, | |
| Defendant. | |

On June 16, 2026, Magistrate Judge Eric J. Markovich issued a Report and Recommendation ("R&R") (Doc. 42) recommending the Court deny Defendant's Motion to Suppress Evidence Due to Fourth Amendment Violations (Doc. 27). Defendant timely objected to the R&R. (Doc. 43.) For the following reasons, the Court will adopt the R&R.

## I.    Background

Neither party objects to, and the Court adopts, the following facts set forth in the R&R. (Doc. 42.) On April 27, 2025, Tucson Police Department (TPD) received a 911 call reporting a man located in the northern parking lot of Mission Manor Park "dancing around his truck" and "retriev[ing] what appeared to be 'a black assault rifle' from the truck, load[ing] the firearm, and then put[ting] it back in the truck." Around 40 minutes later, TPD Officer Lee Cortez arrived at the park.

Officer Cortez saw a man and vehicle matching the description from the 911 call and parked his patrol vehicle at an angle facing the driver's side of the truck. Cortez then

approached the man and, because Defendant did not speak English, asked Defendant in broken Spanish if the truck belonged to him, if he had identification, and if he had a firearm. Defendant said the truck was his and he did not have a firearm. Defendant then attempted to approach the truck to retrieve his identification. Cortez told him to "pause" because another officer was looking through the passenger-side window to see if there was a firearm in plain view, but the officer did not see one. Cortez then allowed Defendant to enter the truck to retrieve his identification, and Defendant provided an expired work visa indicating he is a citizen of Mexico. Cortez again asked Defendant if he had a firearm, and Defendant told officers there was a rifle in the truck and tried to enter the truck. Cortez instructed Defendant to sit on the curb and Defendant complied. Officers subsequently arrested Defendant and performed a search of his truck, where they found a black bag containing a firearm and ammunition. Defendant was charged with prohibited possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A).

## II.    Standard of Review

When reviewing a magistrate judge's R&R, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). However, objections to R&Rs "are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of P.R.*, 313 F. Supp. 2d 32, 34 (D.P.R. 2004); *see also Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work," and "[t]here is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge."). If, following review, "the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Morris v. Shinn*, No. CV 20-322-TUC-JAS (EJM), 2023

WL 6248830, at *2 n.5 (D. Ariz. Sept. 26, 2023) (quoting *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)).  District courts "conduct proper de novo review where they state they have done so, even if the order fails to specifically address a party's objections."  *United States v. Ramos*, 65 F.4th 427, 433–34 (9th Cir. 2023) ("[T]he district court ha[s] no obligation to provide individualized analysis of each objection.").

### III.    Discussion

First, Defendant objects to the R&R's assertion Officer Cortez had "reasonable suspicion for a brief investigatory stop."  (Doc. 43.)  Law enforcement officers may conduct an investigatory stop of a vehicle or person if they have "reasonable suspicion" criminal activity is afoot.  *See United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000).  "The reasonable-suspicion standard is not a particularly high threshold to reach."  *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013).

When determining if there was reasonable suspicion for a stop, a court must consider the totality of the circumstances of each case to determine "whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 412 (1981)).  In determining whether reasonable suspicion exists, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them."  *Id.* (citation and internal quotation marks omitted).  What may seem to be innocuous conduct when viewed in isolation may be appropriately considered when analyzing the totality of the circumstances.  *Id.* at 273–75; *see United States v. Cotterman*, 709 F.3d 952, 970 (9th Cir. 2013) ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances.").  The factors considered can have an "innocent explanation" if taken alone; however, the Supreme Court has cautioned that courts should not engage in a

"divide-and-conquer analysis" when reviewing the factors considered by law enforcement. *Arvizu*, 534 U.S. at 274. Circumstances to be considered include, but are not limited to, the characteristics of the area where the stop occurred and the behavior and appearance of the person stopped. *See id*. at 273; *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (stating an area's reputation as one of "expected criminal activity" is a relevant factor for determining whether there is reasonable suspicion).

Defendant contends the R&R erred in considering his statement he did not have a firearm in his vehicle when determining whether reasonable suspicion existed. Defendant argues he was already detained at the time he made the statement, and, without the statement, reasonable suspicion did not exist. Specifically, he argues equating "dancing and then retrieving, loading, and stowing a firearm" to reasonable suspicion "sweeps in too much innocent conduct," asserting the formula for reasonable suspicion cannot be "innocent conduct plus lawful conduct equals reasonable suspicion." (Doc. 43 at 2.)

Even if the R&R erred in considering Defendant's statement, Officer Cortez had a sufficient basis to find reasonable suspicion prior to Defendant's statement regarding the firearm. *See Montero-Camargo*, 208 F.3d at 1130 n.11 (explaining a seizure may only be justified by reference to factors that were present up to the time the stop was made). As discussed, Cortez responded to a 911 call reporting a man dancing around his truck and then retrieving and loading a black assault rifle. While Cortez testified it is normal in Arizona to carry "handguns and pistols, as long as they're holstered on the side," he also testified it "becomes concerning" when an individual brings "an assault rifle to a park" where families are present. (Doc. 37 at 12.) Cortez additionally testified he has encountered situations like the one here "quite often" in his seven years with TPD and his goal when investigating incidents like this is "to stop any type of shooting from occurring." (*Id.*) He additionally testified he was "investigating a suspicion that a crime could occur," including a "mass shooting," and testified disturbing the peace and recklessly brandishing a firearm are also crimes under Arizona law. (*Id.* at 14, 30.) The officer's concern about a mass shooting stemmed from prior incidents in which he had encountered individuals

who brought assault rifles to a park when people were present. (*Id.* at 12.)  Although taken individually these factors may not lend themselves to finding reasonable suspicion, when taken in their totality, it was reasonable for Cortez to conduct an investigatory stop.  *See Arvizu*, 534 U.S. at 274.

Defendant additionally takes issue with the R&R's reliance on Officer Cortez's testimony, arguing the record lacks evidence showing Cortez had "any particularized experience regarding firearms and mass shootings, let alone at any park." (Doc. 43 at 3.)  As mentioned above and in the R&R, Cortez testified he had previously encountered individuals who brought assault rifles to a park when people were present, and his main concern in those instances was whether the individual was planning on committing a mass shooting. (Doc. 37 at 12, 14–15.)  This experience, coupled with the circumstances of his encounter with Defendant, forms the basis for reasonable suspicion to conduct an investigatory stop.  The Court will adopt the R&R and deny Defendant's Motion to Suppress.

## IV.    CONCLUSION

**IT IS ORDERED** the R&R (Doc. 42) is **ADOPTED** over Defendant's objections.

**IT IS FURTHER ORDERED** Defendant's Motion (Doc. 27) is **DENIED**.

Dated this 28th day of July, 2026.

Honorable Scott H. Rash
United States District Judge